# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| REALPAGE, INC., REALPAGE VENDOR COMPLIANCE LLC | § § § § § § § § |
| v. | Civil Action No. 4:16-CV-00737 Judge Mazzant |
| ENTERPRISE RISK CONTROL, LLC, LONNIE DERDEN | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel Document Production, Motion to Overrule Objections, and Motion to Compel Document Custodian Deposition (Dkt. #40). After reviewing the relevant pleadings and motion, the Court finds the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiffs RealPage, Inc. and RealPage Vendor Compliance LLC (collectively, "Plaintiffs" or "RealPage") seek a preliminary injunction against Defendants Enterprise Risk Control, LLC ("Enterprise") and Lonnie Derden ("Derden") (collectively, "Defendants") from using or benefiting from any of Plaintiffs' trade secrets or other confidential or proprietary information (Dkt. #10 at p. 17–18). At the center of the controversy is the allegation that Derden and his employees took trade secret and confidential information from Plaintiffs and used it to create a competing product sold by Enterprise.

On November 30, 2016, the Court entered an Agreed Order Continuing Preliminary Injunction Hearing and Setting Discovery and Briefing Schedule (Dkt. #33) and an agreed Protective Order and Source Code Protocol (Dkt. #34). The agreed discovery schedule set the week of December 19, 2016 as the time to make Source Code available for inspection in

accordance with the agreed protective order, and December 19, 2016 as the deadline for parties to serve responses to requests for production of documents ("RFPs").

On December 2, 2016, Plaintiffs served their first set of requests for production to Enterprise and Derden (Dkt. #40, Exhibits A, B). On December 19, 2016, Defendants served their responses to Plaintiffs' first set of RFPs (Dkt. #40, Exhibits C, D). Between December 19, 2016, and this motion, the parties discussed the allegedly inadequate responses (Dkt. #40, Exhibits E, F).

On February 17, 2017, Plaintiffs filed this motion (Dkt. #40). On February 27, 2017, Defendants filed their response, indicating that certain additional disclosures would be made later that day (Dkt. #44). On the same day, Plaintiffs filed a reply (Dkt. #47). On February 28, 2017, Plaintiffs filed a supplemental reply, confirming that Defendants produced 7,343 emails and their attachments the night before (Dkt. #48). On March 1, 2017, Defendants filed a sur-reply (Dkt. #51).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents ("RFPs"), electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." *Id.* 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.*

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a nonfrivolous argument for changing the law. Fed. R. Civ. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. Fed. R. Civ. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the

3

proportionality of all discovery in resolving discovery disputes. Fed. R. Civ. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

**ANALYSIS**

Plaintiffs ask the Court to overrule Defendants' objections and to order production of certain documents. The Court will take each request in turn, beginning with objections to specific RFPs and then addressing compulsion of documents.

**Objections**

Plaintiffs argue Enterprise's objections to RFPs 1–3, 5–7, 9, 11–13, 15, 16, 18, and 19 and Derden's objections to RFPs 2–5 should be overruled because they are boilerplate and not stated with specificity. Defendants argue that Plaintiffs have not objected to the merits of the objections, but only the specificity. Defendants further argue that their objections are specific because they quoted specific portions of the questions that were vague or overbroad. The Court agrees that Plaintiffs only make specificity arguments in their motion regarding Defendants' responses to discovery. However, Plaintiffs do address the merits in their request to compel documents. Therefore, the Court will address specificity here and the merits later.

*a. "Subject to" language*

As an initial matter, the Court finds Defendants waived each of their objections, except to RFP 11, by including "subject to the foregoing" in the response. The practice of including "subject to" or "without waiving" statements after objections is an age-old habit comparable to

belts and suspenders. This practice is "manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." *Keycorp v. Holland*, No. 3:16-cv-1948-D, 2016 WL 6277813, at *11 (N.D. Tex. Oct. 26, 2016) (quoting *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 470 (N.D. Tex. 2015)). Such an objection and answer "leaves the requesting [p]arty uncertain as to whether the question has actually been fully answered," *Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008), and "wondering as to the scope of the documents or information that will be provided as responsive." *Heller v. City of Dall.*, 303 F.R.D. 466, 487 (N.D. Tex. 2014).

Rule 34 does not allow this kind of hedging. Rule 34 allows a party either to "state that inspection and related activities will be permitted as required" or to "state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B). If a party chooses to object to part of a request, the party "must specify the part and permit inspection of the rest." *Id.* 34(b)(2)(C). A response that states "subject to the foregoing" is not specific enough as to either (1) the completeness of the answer or (2) the availability of documents for inspection. The Court finds that Defendants' inclusion of "subject to the foregoing" is not supported by the federal rules and goes against the purposes of a just, speedy, and inexpensive resolution. *See Carr*, 312 F.R.D. at 470.

By answering questions "subject to" Defendants failed to specify the scope of their answer in relation to the request. This makes it impossible for Plaintiffs or the Court to assess the sufficiency of the response. Therefore, Defendants have waived each objection, except to RFP 11, by including "subject to" language in their responses. *See Carr*, 312 F.R.D. at 470.

Defendants shall fully supplement their responses to Plaintiffs' requests, except RFP 11, consistent with the proper manner of responding or answering as laid out above.

*b. Boilerplate Objections*

Further, Defendants waived several objections by making boilerplate objections. It is well-established that parties cannot make general or boilerplate objections to discovery requests. *Heller*, 303 F.R.D. at 483 (N.D. Tex. 2014). Rule 34 requires that a response to an RFP "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). The party resisting discovery "must show specifically . . . how each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982)). A party may not "refuse discovery simply by making a boilerplate objection that it is not proportional." Rule 26(b)(1), advisory committee note (2015). Because "[i]n the face of [general] objections, it is impossible to know whether information has been withheld and, if so, why." *Heller*, 303 F.R.D. at 483 (quoting *Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011)).

Nearly all of Defendants' responses begin with the objection:

> [Defendant] objects on the basis that the request is overbroad, unduly burdensome, and seeks information that is neither relevant nor likely to lead to the scope of admissible discovery considering the proportionality of the needs in this case, which includes the Parties' relative resources vis-à-vis the other and the burden/expense if the proposed discovery and likeliness of any benefit.

(Dkt. #40, Exhibit C, D). Defendants argue that their objections, including the one above, are not boilerplate because they point out specific portions of the request that are objectionable (Dkt. #44 at p. 17). The Court disagrees.

6

"Boilerplate" means "standardized text" or "ready-made or all-purpose language." *Boilerplate*, Merriam-Webster Collegiate Disctionary (11th ed. 2007); *Boilerplate*, Black's Law Dictionary (10th ed. 2014). Defendants used the above objection on eighteen of their twenty-five RFP responses. This is the epitome of "standardized text." Defendants appear to argue that because they provided slight variations to each RFP, except Enterprise's RFP 15, that the objections are therefore specific to the request. The Court disagrees. Simply put, the above objection does not "state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B). Defendants' additional reasons after the objection, which often begin "specifically," address separate concerns such as relevance or ambiguity. However, those objections stand or fall on their own. Therefore, Defendants' failure to specify specific grounds in the above objection results in waiver of the objection. Fed. R. Civ. P. 34(b)(2)(B); *Keycorp*, 2016 WL 6277813, at *11. The Court will now address the additional reasons that accompany some of Defendants' responses.

Enterprise's responses to RFPs 1, 7, 9, 12, 16, and 18, and Derden's response to RFP 2 make the same boilerplate objection but add that certain words or phrases are "overbroad, vague, and ambiguous." Defendants do not provide specific reasons for how these words are overbroad, vague, or ambiguous, and therefore Defendants waived their objections. *Heller*, 303 F.R.D. at 483–93.

Even if Defendants did not waive these objections, Defendants' objections are overruled. Defendants have not met their burden to explain the specific and particular way that each request is overbroad, vague, or ambiguous after exercising reason and common sense to attribute ordinary definitions to terms and phrases used in the request. *Id.* at 491. Further, based on the Court's review, these requests are not so overbroad, vague, or ambiguous as to be incapable of

7

reasonable interpretation and to prohibit Defendants' responses. Thus, these objections are overruled.

Apart from the boilerplate objections, Enterprise objects to RFP 2 because documents referring to products and services to the "now unlimited marketplace" of single-family and multi-family marketplace is too broad. However, Enterprise also objects to RFPs 7 and 12 because they ask for documents that ask for more than the single-family and multi-family real estate management areas because only the single-family and multi-family markets were restricted. Enterprise explains that it does work for commercial tenants as well, but that was never restricted and therefore not part of the claims before the Court. The Court finds that the responses to RFPs 7 and 12 are inconsistent with the response to RFP 2. If Enterprise does business in three areas, two of which are part of the suit, the Court does not see how a request for documents relating to the two areas that are part of the suit is overbroad. Therefore, the Court overrules Enterprise's objection that the "unlimited" marketplace is overbroad. However, the Court sustains Enterprise's objections to documents encompassing commercial tenants in RFPs 7 and 12.

*c. Relevance Objections*

Enterprise objects to RFPs 2, 6 and 12, and Derden objects to RFP 3 because requests for documents about activities in the single-family or multi-family rental property markets after restrictions in Derden's Employment Agreement expired are not relevant to the claims or defenses raised in this case. Plaintiffs do not respond to the merits of these objections. The Court finds these objections sufficiently specific and agrees with Defendants. The Court sustains the objections with modification.

The Employment Agreement expressly states that the Significant Owner Agreement's ("SOA") restrictive period controls noncompetitive activities (Dkt. #1, Exhibit C at p. 6). The SOA's period is for five years after the date of Compliance Depot's sale to Plaintiffs.[1] The Employment Agreement only restricted competition for three years after Derden's termination. The SOA's period ended on May 5, 2016, after the Employment Agreement would have ended. Therefore, Derden was restricted from competing until May 5, 2016. The Court sustains Defendants' objections to documents relating to the development or provision of products or services offered by Defendants after the restrictions in the SOA expired.

Enterprise also objects to RFP 11 because documents showing payments to persons who were involved in the development of Enterprise's risk management application is not relevant. Enterprise has agreed to produce documents that it relied upon in requesting a preliminary injunction bond and has produced those documents. Based on Enterprise's agreement, the Court finds Enterprise has waived its objection on relevance grounds.

*d. Privilege & Confidentiality*

Enterprise also objects to RFPs 3 and 13 for privilege concerns and 7, 9, 11, and 13 for confidentiality or proprietary issues. Derden objects to RFPs 3 and 4 on privilege grounds. On February 27, 2017, Enterprise produced documents responsive to RFP 11, which contained employee information. Based on Enterprise's response and disclosure of information, the Court finds Defendants waived the objection to RFP 11.

Regarding confidential and proprietary objections, Plaintiffs note that a protective order already governs this case. To the extent that Enterprise is withholding any documents or

---

[1] Compliance Depot, L.L.C. is a predecessor RealPage Vendor Compliance LLC. A more detailed factual history of the Compliance Depot—RealPage transaction is available in the Court's Memorandum Opinion and Order (Dkt. #39)

information based on a confidentiality objection, those objections are overruled, and any responsive documents should be produced subject to the protective order.

Finally, a privilege log must be produced for any documents, communications, or other materials withheld from production on privilege grounds. *See* Fed. R. Civ. P. 26(b)(5). Neither party addresses whether Defendants produced such a log. To the extent that Defendants have not done so, the Court orders Defendants to produce a privilege log for each assertion of privilege within seven (7) days of this order.

*e. Harassing and Fishing Expedition*

Enterprise objects to RFPs 5–7, 13, and 19, and Derden objects to RFPs 3 and 5 as harassing and a fishing expedition. Defendants' only reason for this objection is that Plaintiffs are Defendants' competitors. Considering the claims made in this case, the Court finds Defendants' reasoning is insufficient to explain the basis for these objections. Fed. R. Civ. P. 34(b)(2)(B). Therefore, the Court overrules Defendants' objections on these grounds.

**Document Production**

For the Court to order production, Plaintiffs must show that Defendants failed to produce documents or to permit the appropriate inspection. Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete response suffices to show a failure to respond. *Id.* 37(a)(4). When some documents have been produced in response to a request, Courts have interpreted "evasive or incomplete" to place a modest burden on the requesting party to support, with existing documents, a reasonable deduction that other documents may exist or did exist but have been destroyed. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 313 (S.D.N.Y. 2003); *see also Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008).

*a. Communications Regarding Development*

Plaintiffs argue that Defendants should produce "[c]ommunications between and among employees or representatives or [Enterprise] and any third party related to the development of [Enterprise's] vendor compliance application" because they are directly relevant to the claim that Enterprise's application was developed using RealPage's trade secrets. Defendants argue that this request is overbroad because it asks for every work-related communication between Enterprise's employees and third parties.

The Court has already determined that Enterprise's overbreadth objection was waived as it was boilerplate and followed by "subject to" language. However, a party will still not be compelled to produce documents if the request is overbroad or unduly burdensome on its face. *E.g.*, *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 537–38 (D. Kan. 2003). The federal rules follow a proportionality standard for discovery. *See* Fed. R. Civ. P. 26(b)(1). Under Rule 26, a request must be proportional to the needs of the case when considering, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Plaintiffs' request is proportional. Defendants' development of its vendor compliance application is very important to the issues at stake in the action. Plaintiffs' claim centers on the development of the vendor compliance application. This discovery may turn the case for either side. The amount in controversy is large. Defendants' own alleged harm from an injunction against the application is $12 million. Only Defendants have access to the communications

requested. Finally, the burden is small because Defendants' company is a small, relatively new company and only a handful of people worked on the application.

On February 27, 2017, Defendants produced 7,343 emails and their attachments. It is not clear whether these emails are responsive to this request, but it is clear that none of the emails are dated before July 3, 2013.

Plaintiffs contend this production is still not enough. Plaintiffs argue that Defendants should be compelled to produce additional emails regarding Bean's assignment from when Derden and Bean left RealPage in June 2012 to when Bean joined Defendants as a full-time employee on July 3, 2013. The Court agrees.

Derden and Tom Bean ("Bean") were RealPage employees until June 2012. In June 2012, Derden and Bean left RealPage and began their own companies. Derden began Enterprise, and Bean began a software consulting company called IDC Software LLC ("IDC"). At some point between June 2012 and July 2013, Bean asked Derden to see if Enterprise needed IDC's services. Ultimately, Bean developed a credentialing application based on Derden's instruction. In July 2013, Bean uploaded the code that he had created onto Enterprise's server.

Defendants have not produced any emails for the period before Bean uploaded his code to Enterprise's server. Clearly, these would be relevant. Therefore, the Court orders Defendants to provide all communications between and among employees or representatives or Enterprise and any third party related to the development of Enterprise's vendor compliance application for the period between June 2012 and July 3, 2013, or to certify that all responsive emails have been produced.

*b. Email Attachments*

Plaintiffs argue that the Court should compel production of attachments to two emails. While this motion was pending, Defendants produced one of the attachments. Plaintiffs now appear only to complain about the email labelled ERC000404. In their sur-reply, Defendants assert that no document is being withheld (Dkt. #51 at p. 2). Assuming that Defendants have produced the other attachment, the Court will only address the email labeled ERC000404.

The attachment to ERC00404 is discoverable because it is relevant to Plaintiffs' trade secret claim. Fed. R. Civ. P. 26(b)(1). Defendants hardly dispute this point (*See* Dkt. #44 at p. 9). Defendants have located the powerpoint, but have not produced it apparently because it was never distributed in written form, but only shown during an in-person presentation. The powerpoint supposedly "illustrate[s] the new look and feel of [Enterprise's] application" (Dkt. #40, Exhibit G). The Court finds that the powerpoint, if it exists, should be produced. Plaintiffs have shown evidence that suggests the powerpoint exists and Defendants have not provided a valid reason for withholding it. Defendants shall certify in their amended response whether the powerpoint referenced in the email labelled ERC000404 was used during the in-person presentation. If Defendants cannot faithfully certify that the powerpoint was not used, Defendants shall produce the powerpoint because it is relevant and responsive to requests asking for communications relating to any products or services offered by Defendants to potential customers. Plaintiffs' motion to compel is granted on this ground.

*c. Product Data, Design Specifications, Operations Specifications, and Related Documents*

Plaintiffs argue that the Court should compel production of documents that Defendants said they would produce in their initial disclosures. Specifically, Defendants stated that they would produce "product data for [Enterprise's] vendor compliance software, Indexer and Vendor

Services, which includes highly confidential and attorneys' eyes only protected source code, product design specifications, operation specifications, and related documents" as documents that Defendants have in their possession, custody, or control and may support their claims. Defendants argue that the source code satisfied this disclosure. Plaintiffs acknowledge that Defendants produced source code, but argue that Defendants have not completely disclosed its source code because there is a gap between June 2012 and July 2013 that Defendants do not adequately explain.

Plaintiffs provided a declaration from their forensic investigator, David Cowen ("Cowen"), to prove that material information is missing from the source code that Defendants produced. In his declaration, Cowen identifies facts that suggest significant edits to the source code occurred between July 2012 and July 2013. Notably, Cowen states that "ERC Development" made a comment on July 23, 2012. Cowen also states that other employees at Enterprise used their real names when making comments and that Bean used his real name as early as October 23, 2012 when making comments. This suggests the "ERC Development" is not necessarily Bean or that Bean was not working completely independently from Enterprise when developing code. Further, Bean added a comment on April 28, 2013 in the files "notcontrol.cs" and "othercontrol.cs". The Court finds that the comments are enough to suggest that significant changes were made to the source code between July 2012 and July 2013.

Defendants explain this gap in their response. Defendants produced affidavits by Enterprise's software developer, Bean, and Chief Financial Officer, Gary Hofer ("Hofer") recounting the events from Bean's development of the application in 2012 all the way up to this litigation. According to Bean's affidavit, IDC developed code for Enterprise before July 2013. In July 2013, Enterprise hired Bean as a full-time employee. At that time, Bean transferred his code

onto Enterprise's computers and removed the previous work from IDC's computer, well before either Bean or Enterprise anticipated litigation. Further, Enterprise certifies by Bean's and Hofer's affidavit that all the code in their possession, custody, and control has been produced.

The Court is in a tough position. Plaintiff has produced evidence that significant changes were made. However, Defendants have explained that the code containing those changes was destroyed in good faith before this litigation. Even though evidence may suggest that more code existed at one time, the Court cannot order a party to produce what it does not have. *Orix USA Corp. v. Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016). Plaintiffs are entitled to an unequivocal representation, under oath, that Defendants have produced all source code that they have in their possession, custody, and control, and that they are not withholding any responsive code based on their objections or otherwise. Plaintiffs have received that representation in Bean's and Hofer's affidavit, as well as Defendants' responses to this motion. The Court declines to order anything further from Defendants on this issue at this time.

Under the same heading, Plaintiffs complain that Enterprise's responses to RFPs 1 and 8 are insufficient because the requests sought documents referred to in Defendants' initial disclosures and Daniel Millstone's November 7, 2016 declaration (Dkt. #21, Exhibit B) that were not provided. Defendants respond that they have produced all documents and that there simply are not as many documents as Plaintiffs believe there to be. The Court agrees with Defendants.

Plaintiffs cite the Joseph Regan letter dated February 10, 2017 (Dkt. #40, Exhibit F) as evidence that Defendants have not responded to repeated efforts to obtain the information. The Court disagrees. The Regan letter specifically responds to Plaintiffs' letter requesting documents. Defendants explain that (1) it could not locate the "piece of paper" referenced in Millstone's

declaration; (2) it admitted that the source code itself represents Millstone's vision; (3) Enterprise could not locate documents that evidence the "original design"; and (4) Enterprise produced some Jira work order documents documenting corrections for "bugs" (Dkt. #40, Exhibit F at p. 4). Further, in response to this motion, Defendants provide the affidavit of their CFO, Hofer. Hofer clarifies that Jira is the only program Enterprise has used and that all Jira documents, not just "bug fixes" have been produced. Thus, the Court finds that Defendants have adequately responded to these requests. Plaintiffs' motion on this ground is denied.

### d. Project Management Software

Next, Plaintiffs argue that Defendants should be compelled to produce the content of any project management software Enterprise used to develop its vendor compliance application (Dkt. #40 at p. 9). Plaintiffs cite RFPs 1 and 8 as the relevant requests. The same reasoning applies as it did for documents showing product data, design specifications, operations specifications, and related documents above. Defendants have sworn under penalty of perjury that Enterprise only used Jira and has produced those documents. Plaintiffs' motion on this ground is denied.

### e. Evidence of Payments for Design and Development

Plaintiffs argue that Defendants should be compelled to produce documents showing the $3.3 million in expenses, including payroll and overhead, to create the vendor compliance application as requested in RFPs 9 and 11. Defendants respond that this information is confidential as it relates to the individual employees' compensation. Before this motion, Defendants produced a summary sheet of compensation for six employees with the names redacted. On February 27, 2017, Defendants produced a seventeen-page document showing payroll expenses for 2013 through 2016. In their supplemental reply, Plaintiffs complain that this

is still not enough because it does not contain any payments to Bean from June 2012 to July 2013. The Court agrees that the production is insufficient and orders supplementation.

Bean's affidavit states that he "began working on a software package with explicit instructions" from Derden (Dkt. #44, Exhibit B at p. 2). Enterprise hired Bean in July 2013. When he began his employment at Enterprise, Bean brought the code that he developed and uploaded it onto Enterprise's computers. However, Defendants have not produced any documents regarding compensation for Bean's time in creating this code or a purchase price of the code. Therefore, it appears that Enterprise did not pay a dime for Bean's code. The Court doubts this conclusion. Defendants shall produce all documents related to payments paid to develop its vendor compliance application, including any payments to Bean or IDC, or else certify that Enterprise did not compensate Bean in any way for the code he brought to Enterprise.

*f. Enterprise's Revenues*

Plaintiffs argue that Enterprise should be compelled to produce documents relating to its revenues derived from its vendor compliance application as requested in RFP 19. Enterprise argues that this request is not proportional because Enterprise's sole project during its existence has been to develop the vendor compliance application and thus the request is akin to "asking a dental practice for all documents relating to teeth." Nevertheless, in response, Enterprise agreed to supplement its production "to include documents relied upon in requesting a preliminary injunction bond as soon as is practicable." However, Plaintiffs still argue that Defendants should produce all documents relating to its revenues, not just those relied upon in requesting a bond amount.

Federal Rule of Civil Procedure 65(c) provides that the movant must post bond before a federal court may issue a preliminary injunction. The bond must be "in an amount the court

17

considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *Id.* The bond requirement serves two functions. First, it assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured. *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989). Second, it provides the plaintiff with notice of the maximum extent of its potential liability. *Id.*

Considering the factors in Rule 26, the Court finds Plaintiffs' request, beyond what Defendants have agreed to produce, is not proportional. The amount of bond is not an important issue at stake in the action. Discovery on the bond issue is not important because the Court sets the amount of bond, the damages caused by an erroneous preliminary injunction cannot exceed the amount of the bond posted, and RealPage has not indicated that it would be unable to post a certain amount of bond. Similarly, the burden placed on Enterprise by disclosing its revenues to a competitor outweighs any likely benefit. Therefore, the Court denies Plaintiffs motion to compel further production by Defendants. However, Defendants are ordered to produce the agreed documents within seven (7) days of this order.

*g. Process of Locating Documents*

Although not directly addressed by Plaintiffs, Enterprise responded to RFPs 9, 16, and 19 with the only limitation that Enterprise was in the process of locating responsive documents. Enterprise shall produce responsive documents within seven (7) days of this order.

**Custodian Deposition**

Plaintiffs seek to depose a corporate representative of Enterprise concerning the existence, retention, and location of Enterprise's source code and documents. Plaintiffs also

request that this deposition does not count against their limit of five depositions and may occur before the window for depositions begins. Plaintiffs argue that good cause exists to modify the Court's Order Amending Expedited Discovery and Briefing Schedule (Dkt. #37) because Enterprise has not complied with its discovery obligations, and its claims that certain documents do not exist is implausible.

The Court entered the current discovery and briefing schedule on an agreed motion by the parties. The order provides that each side may take five depositions, excluding experts, but that the order may be amended for good cause.

At this time, the Court does not find good cause to amend its prior order. Defendants have provided evidence that Bean destroyed the code well before the anticipation of litigation. Plaintiffs have five depositions to gather information to prove their case for preliminary injunctive relief, including any issues of code destruction. Plaintiffs fail to show how the agreed number of depositions is not sufficient to prove their claims and to investigate the issue of code destruction. Therefore, the Court does not find good cause to amend its prior order at this time.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion to Compel Document Production, Motion to Overrule Objections, and Motion to Compel Document Custodian Deposition (Dkt. #40) is hereby **GRANTED in part and DENIED in part**. Defendants shall produce all items in accordance with this order within seven (7) days.

**IT IS SO ORDERED.**

**SIGNED this 29th day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE